UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BCI ACRYLIC BATH SYSTEMS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | 16 C 68 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| CHAMELEON POWER, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

BCI Acrylic Bath Systems, Inc. alleges in this diversity suit that Chameleon Power, Inc. breached their software development and services contract. Doc. 1. Chameleon has moved to dismiss for lack of personal jurisdiction and improper venue; in the alternative, Chameleon seeks abstention under the doctrine set forth in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), pending the resolution of Chameleon's previously filed suit against BCI in Michigan state court, *Chameleon Power, Inc. v. BCI Acrylic Bath Sys., Inc.*, 2015-150765-CB (Cir. Ct. Oakland Cnty., Mich. filed Dec. 23, 2015) (state court complaint reproduced at Doc. 16-2 at 3-5). Doc. 16. The motion to stay is granted, and the motion to dismiss is denied without prejudice to renewal if the stay is lifted.

**Background**

BCI is an Illinois corporation that manufactures and distributes acrylic bath liners, wall surrounds, and other home products; its principal place of business is in a northern suburb of Chicago. Doc. 1 at ¶ 1; Doc. 19-1 at ¶¶ 1-2. Chameleon is a Michigan corporation that offers information technology ("IT") services; its principal place of business is in Novi, Michigan. Doc. 1 at ¶ 2; Doc. 16-1 at ¶ 1.

1

On September 15, 2014, BCI and Chameleon entered into a "Software Development and Services Agreement." Doc. 1 at ¶ 5; Doc. 1-1. The agreement stated that Chameleon would provide BCI with several technical services, including a "web visualization solution," an iPad app, photographs and stock scenes for BCI's website, a "custom ImageMapper" photograph upload tool, data capture, a software license, and a "[p]roduct management service for ongoing maintenance of products by Chameleon." Doc. 1-1 at 5. Section 17 stated that Chameleon's "[d]evelopment of [these] tools and services … will take approximately ninety (90 days) from receipt of [the] signed agreement, down payment, complete receipt of products data, and final room scenes selection from" BCI. Doc. 1 at ¶ 6; Doc. 1-1 at 3.

According to BCI, Chameleon failed to timely provide the required tools and services. Doc. 1 at ¶ 7. As a result, Brad Dimick, BCI's Director of Learning & Development, arranged for Chameleon to witness the non-performing elements of its work via virtual meetings on the web service www.gotomeeting.com. Doc. 19-1 at ¶ 10-11. On January 23, 2015, Dimick visited Chameleon's office in Michigan to demonstrate the problems that BCI was encountering due to Chameleon's alleged failure to perform. *Id*. at ¶ 12. BCI has paid Chameleon $35,000 under the agreement. Doc. 1 at ¶ 9.

On December 23, 2015, Chameleon sued BCI in the Circuit Court of Oakland County, Michigan, for breaching the agreement. Doc. 16-2 at 3-5. Chameleon alleges that it has performed its contractual obligations and delivered the required services and products to BCI, but that BCI had paid only approximately $33,000 of the $85,000 invoiced by Chameleon. *Id*. at 4. On January 5, 2016, BCI filed the present suit in this court, alleging breach of contract and seeking the $35,000 it has paid Chameleon plus lost profits exceeding $500,000. Doc. 1 at ¶ 10. On March 9, 2016, BCI answered the Michigan suit and filed affirmative defenses and a

counterclaim for breach of contract. Doc. 16-2 at 12-20. Putting aside the two paragraphs in BCI's federal complaint alleging diversity jurisdiction and proper venue, Doc. 1 at ¶¶ 3-4, BCI's counterclaim in the Michigan suit is identical to its federal complaint. *Compare id.* at ¶¶ 1-2, 5-10, *with* Doc. 16-2 at 12-13.

## Discussion

The *Colorado River* doctrine provides that "a federal court may stay or dismiss a suit in exceptional circumstances when there is a concurrent state proceeding and the stay or dismissal would promote 'wise judicial administration.'" *Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 700 (7th Cir. 1992) (quoting *Colorado River*, 424 U.S. at 818); *see also Freed v. JPMorgan Chase Bank, N.A.*, 756 F.3d 1013, 1018 (7th Cir. 2014) (same). The Supreme Court "has cautioned that abstention is appropriate only in 'exceptional circumstances,' and has also emphasized that federal courts have a 'virtually unflagging obligation … to exercise the jurisdiction given them.'" *AXA Corporate Sols. v. Underwriters Reinsurance Corp.*, 347 F.3d 272, 278 (7th Cir. 2003) (quoting *Colorado River*, 424 U.S. at 813, 817) (citation omitted). In determining whether to abstain, the court's task is "not to find some substantial reason for the *exercise* of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist exceptional circumstances, the clearest of justifications, that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction." *TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 591 (7th Cir. 2005) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25-26 (1983)) (internal quotation marks omitted).

The *Colorado River* analysis has two steps. "First, the court must determine whether the state and federal court actions are parallel." *Freed*, 756 F.3d at 1018. If the actions are parallel, the court then weighs ten non-exclusive factors to determine whether abstention is proper. *Ibid.*

### A. Whether the Federal and State Cases Are Parallel

Although state and federal suits need not be identical to be parallel, *see Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 498-99 (7th Cir. 2011) ("[F]or *Colorado River* purposes … [p]recisely formal symmetry is unnecessary."), the two suits here *are* identical. Chameleon sued BCI in Michigan state court for breach of contract, and BCI in turn sued Chameleon in this court for breaching the same contract and then filed a counterclaim in state court that is materially identical to its federal claim. Neither suit includes additional claims, issues, or parties. Both cases turn on which party breached the contract, and thus "will be resolved largely by reference to the same evidence." *Tyrer v. City of S. Beloit*, 456 F.3d 744, 752-53 (7th Cir. 2006).

Because suits are parallel "when substantially the same parties are contemporaneously litigating substantially the same issues in another forum," *Freed*, 756 F.3d at 1019, BCI's federal suit and Chameleon's state court suit are parallel for *Colorado River* purposes. *See AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 521 (7th Cir. 2001) ("[A]ctions filed in separate fora alleging breaches of different provisions of the same contract may frequently be deemed parallel for *Colorado River* purposes."). It bears mention BCI does not argue that parallelism is absent here, Doc. 19 at 10-11, thus forfeiting the point. *See Milligan v. Bd. of Trs. of S. Ill. Univ.*, 686 F.3d 378, 386 (7th Cir. 2012) ("[T]he forfeiture doctrine applies not only to a litigant's failure to raise a general argument … but also to a litigant's failure to advance a specific point in support of a general argument."); *Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010) ("We have made clear in the past that it is not the obligation of this court to research and construct legal arguments open to parties, especially when they are represented by counsel, and we have warned that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.") (internal quotation marks and alterations omitted).

### B. The *Colorado River* Factors

The second step in the *Colorado River* analysis requires examining and balancing the following ten non-exclusive factors:

> 1) whether the state has assumed jurisdiction over property; 2) the inconvenience of the federal forum; 3) the desirability of avoiding piecemeal litigation; 4) the order in which jurisdiction was obtained by the concurrent forums; 5) the source of governing law, state or federal; 6) the adequacy of state-court action to protect the federal plaintiff's rights; 7) the relative progress of state and federal proceedings; 8) the presence or absence of concurrent jurisdiction; 9) the availability of removal; and 10) the vexatious or contrived nature of the federal claim.

*Freed*, 756 F.3d at 1018. "'[N]o one factor is necessarily determinative' and the careful weighing of all factors is necessary to determine whether circumstances exist warranting abstention." *Ibid.* (quoting *Colorado River*, 424 U.S. at 818); *see also Tyrer*, 456 F.3d at 754-55.

*1. Whether the state has assumed jurisdiction over property.* The state court has not assumed jurisdiction over property, so this factor weighs against abstention.

*2. The inconvenience of the federal forum.* Under this factor, the "proper inquiry is the relative inconvenience of the competing fora to the parties." *AAR*, 250 F.3d at 522-23 (emphasis omitted). BCI's principal place of business is this District, while Chameleon's is in the Michigan court's jurisdiction. Because neither forum is convenient for both parties and because each forum is equally inconvenient to the out-of-state party, this factor is neutral.

*3. The desirability of avoiding piecemeal litigation.* "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Day v. Union Mines Inc.*, 862 F.2d 652, 659 (7th Cir. 1988); *see also Freed*, 756 F.3d at 1022. "Dual proceedings could involve … a grand waste of efforts by both the court and parties in litigating the same issues regarding the same contract in two forums at once." *Day*, 862 F.2d at 659 (internal quotation marks omitted). "Here, the state and federal forums

have … the same parties before them and are litigating substantially the same issues arising from the same set of facts." *Freed*, 756 F.3d at 1022. As a result, proceeding simultaneously in both forums would ensure "duplicative and wasteful litigation with the potential of inconsistent resolutions of the issue." *Caminiti*, 962 F.2d at 701; *see also Freed*, 756 F.3d at 1022 ("[I]f both state and federal proceedings were allowed to proceed, inconsistent rulings could jeopardize the appearance and actuality of justice.").

BCI contends that the possibility of piecemeal litigation "applies equally to both parties," Doc. 19 at 11, but that is not a relevant consideration for this factor, which is concerned above all with not "duplicating the amount of *judicial* resources required to reach a solution." *Freed*, 756 F.3d at 1022 (emphasis added); *see also Adkins*, 644 F.3d at 498 ("The [*Colorado River*] prudential doctrine is a matter of judicial economy."). Simultaneous proceedings would also incent one or the other party to attempt to delay proceedings in one forum should the other forum appear more favorable. *See LaDuke v. Burlington N. R.R. Co.*, 879 F.2d 1556, 1560 (7th Cir. 1989). This factor strongly favors abstention.

*4. The order in which jurisdiction was obtained by the concurrent forums.* Chameleon filed the state suit on December 23, 2015, Doc. 16-2 at 3-5, and BCI filed the federal suit less than two weeks later, on January 5, 2016, Doc. 1. Where one case is filed closely on the heels of the other, the Seventh Circuit has cautioned that this factor "is to be applied in a pragmatic, flexible manner" and "should not be measured exclusively by which complaint was filed first." *Caminiti*, 962 F.2d at 702 (holding that suits filed one week apart did "not weigh heavily in either direction" for purposes of this factor). In such situations, this factor tracks the seventh *Colorado River* factor, with the important consideration being "how much progress has been made in the two actions." *Ibid*.

6

At this point, "the state proceeding has progressed further than the federal." *Ibid*. Indeed, there were no proceedings in this court, "other than the filing of the complaint, prior to th[is] motion." *Colorado River*, 424 U.S. at 820. BCI contends that this suit has progressed as far as the state court suit, but that is wrong, as BCI has already answered the state court complaint and filed affirmative defenses and a counterclaim. Doc. 16-2 at 12-20. This factor slightly favors abstention.

  *5. The source of governing law, state or federal*. The parties dispute whether Illinois or Michigan law governs their claims. Doc. 16 at 13; Doc. 19 at 11; Doc. 21 at 7-8. The court need not resolve the choice-of-law issue because this factor weighs against abstention regardless of which side is right, as state law rather than federal law will govern this suit. *See Microsoftware Computer Sys., Inc. v. Ontel Corp.*, 686 F.2d 531, 537 (7th Cir. 1982) (holding that the fact that federal "jurisdiction is founded on diversity of citizenship and the law to be applied is exclusively state law" weighs in favor of abstention), *overruled on other grounds*, *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271 (1988).

  *6. The adequacy of state court action to protect the federal plaintiff's rights*. BCI contends that Chameleon has a "home state advantage" in Michigan state court, Doc. 19 at 11, but has offered no evidence or even any reason suggesting that the Michigan state court would be prejudiced against it. "[T]here is no fear that [BCI's] rights will not be adequately protected in the state proceeding[,] as the same questions of law and fact are presented as in th[is] case and the state court can resolve these questions just as effectively." *Clark v. Lacy*, 376 F.3d 682, 688 (7th Cir. 2004); *see also AXA Corporate*, 347 F.3d at 280 ("AXA has insinuated that the Texas courts will not live up to th[e] standard [of the federal court], but this is pure speculation that we expressly disavow."). In the exceedingly unlikely circumstance that the Michigan court does not

adequately protect BCI's rights, "ordinary principles of res judicata and collateral estoppel would not prevent [BCI] from bringing [its] claims back before a federal court." *Lumen Constr., Inc. v. Brant Constr. Co. Inc.*, 780 F.2d 691, 697 (7th Cir. 1985) (citing *Allen v. McCurry*, 449 U.S. 90, 101 (1980)); *see also Freed*, 756 F.3d at 1023 (acknowledging that a *Colorado River* stay "allows [the plaintiff] the possibility to revive his federal litigation … in the unlikely event that the state court action is inadequate"); *Brokaw v. Weaver*, 305 F.3d 660, 671 (7th Cir. 2002) ("[N]otwithstanding the doctrine of collateral estoppel, redetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation.") (internal quotation marks omitted).

Further, BCI severely undercut its submission that Chameleon enjoys a home-state advantage by choosing not to remove the state court suit to the Eastern District of Michigan. If not removable at its inception, the state court suit certainly became removable once BCI filed its $535,000 counterclaim on March 9, 2016. *See* 28 U.S.C. §§ 1332(a), 1441(a)-(b); Doc. 16-2 at 12-14. Yet BCI failed to remove the state court suit either within thirty days of being served, which it could have done if the suit was removable at its inception, or within thirty days of its filing the counterclaim, which it could have done if the suit became removable only once it filed the counterclaim. *See* 28 U.S.C. §§ 1446(b)(1), 1446(b)(3). Because BCI "decided voluntarily to forego the opportunity to litigate in one federal forum [the Eastern District of Michigan], the concerns underlying *Colorado River* are now mitigated as it seeks to litigate in another [this District]." *VRCompliance LLC v. HomeAway, Inc.*, 715 F.3d 570, 576 (4th Cir. 2013); *see also Microsoftware*, 686 F.2d at 537 ("If MCS were concerned by prejudice in the New York state courts, it could have removed the state court action to a federal court in New York. Indeed, any

8

interest MCS had in a federal forum could have been satisfied by removing the one action instead of creating a second."). This factor favors abstention.

*7. The relative progress of state and federal proceedings.* As discussed above, the state suit has progressed slightly further than this suit, so this factor slightly favors abstention.

*8. The presence or absence of concurrent jurisdiction.* Because BCI's claims arise under state law, Chameleon would be susceptible to suit in either Michigan or Illinois state court, so this factor favors abstention. *See Microsoftware*, 686 F.2d at 537; *cf. Caminiti*, 962 F.2d at 702-03 (holding that the state court's inability to hear a federal claim weighed against abstention).

*9. The availability of removal.* "The ninth factor intends to prevent a federal court from hearing claims that are closely related to state proceedings that cannot be removed." *Freed*, 756 F.3d at 1023. As noted, the state court suit at one point *was* removable had BCI chosen to remove it. But because BCI failed to do so, this factor favors abstention because this federal suit is bound up with claims in the (now) non-removable state case.

*10. The vexatious or contrived nature of the federal claims.* There is no need to comment adversely on BCI's motives to conclude that, because its federal complaint mirrors its state court counterclaim, the federal suit is "vexatious" and "contrived" within the meaning of *Colorado River*. *See Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1289 (7th Cir. 1988) ("[T]he federal suit could be considered both vexatious and contrived. … [W]e see no reason why all claims and all parties could not have been, and still could not be, part of one suit."); *see also Freed*, 756 F.3d at 1024 (noting that the tenth "factor can weigh in favor of abstention when the claims and parties in the federal suit could have been included in the original state court proceeding"). That said, the fact that BCI declined to remove the state court suit to

9

the Eastern District of Michigan while filing an identical suit in this District strongly suggests that it has behaved vexatiously.

In sum, eight of the ten *Colorado River* factors—particularly the third, fifth, sixth, ninth, and tenth factors—favor abstention and provide the "exceptional circumstances" necessary to abstain under that doctrine. The Seventh Circuit routinely holds that *Colorado River* should be implemented through a stay, not dismissal. *See Mulholland v. Marion Cnty. Election Bd.*, 746 F.3d 811, 816 (7th Cir. 2014) (noting that *Colorado River* abstention "ordinarily calls for a stay rather than dismissal"); *Montano v. City of Chicago*, 375 F.3d 593, 602 (7th Cir. 2004); *CIGNA Healthcare of St. Louis, Inc. v. Kaiser*, 294 F.3d 849, 851-52 (7th Cir. 2002). Accordingly, this suit is stayed pending resolution of the Michigan state court suit. When that suit concludes, any party may move this court to lift the stay and proceed with this federal case in a manner consistent with the state court's rulings and any applicable preclusion principles. *See Rogers v. Desiderio*, 58 F.3d 299, 302 (7th Cir. 1995) ("It is sensible to stay proceedings until an earlier-filed state case has reached a conclusion, and then (but only then) to dismiss the suit outright on grounds of claim preclusion.").

Because the case is stayed, the court need not rule on Chameleon's motion to dismiss. *See In re LimitNone, LLC*, 551 F.3d 572, 576 (7th Cir. 2008) ("[A] federal court has leeway to choose among threshold grounds for denying audience to a case on the merits.") (quoting *Sinochem Int'l Co. Ltd. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007)). The motion to dismiss is therefore denied without prejudice to renewal if the stay in this case is lifted. *See Lumen*, 780 F.2d at 693 (noting that, "[d]ue to its disposition of the *Colorado River* issue, the [district] court did not decide whether the complaint should also be dismissed"); *Ritz of Chi., Ltd. v. Espinosa*, 2009 WL 1904401, at *1 (N.D. Ill. July 2, 2009) (granting a *Colorado River* stay

without resolving several motions to dismiss); *M.S. Distrib. Co. v. Nat'l Record Mart, Inc.*, 2000 WL 1720971, at *1 (N.D. Ill. Nov. 16, 2000) (granting a *Colorado River* stay without resolving a motion to dismiss for lack of personal jurisdiction or improper venue).

## Conclusion

For the foregoing reasons, Defendants' motion to stay under the *Colorado River* doctrine is granted, and its motion to dismiss is denied without prejudice. This suit is stayed pending resolution of *Chameleon Power, Inc. v. BCI Acrylic Bath Systems, Inc.*, 2015-150765-CB (Cir. Ct. Oakland Cnty., Mich. filed Dec. 23, 2015).

May 24, 2016

United States District Judge